IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MELISSA L. HINA,                           08-CV-1275-BR

         Plaintiff,

                                           OPINION AND ORDER
v.                                         Portland Division

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

         Defendant.


**MERRILL SCHNEIDER**
Schneider Law Offices
PO Box 16310
Portland, Oregon 97292-0310
(503) 255-9092

         Attorney for Plaintiff

**KENT S. ROBINSON**
Acting United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1 - OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3621

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Melissa L. Hina seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Hina's protective application for Supplemental Security Income (SSI).  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


## ADMINISTRATIVE HISTORY

    Hina filed her most recent application for SSI on December 3, 2003.  Tr.[1] 62.  Her application was denied initially and on reconsideration.  Tr. 162-63.  An Administrative Law Judge

---

    [1]Citations to the official transcript of record filed by the Commissioner on April 16, 2009, are referred to as "Tr."

2 - OPINION AND ORDER

(ALJ) held an initial hearing on September 11, 2006.  Tr. 338-77.
At the hearing, Hina was represented by an attorney.  Tr. 338.
Hina and a vocational expert (VE) testified at the hearing.
Tr. 338-77.

The ALJ issued an opinion on October 10, 2006, in which he
found Hina is not disabled and, therefore, is not entitled to
benefits.  Tr. 27-34.  On May 18, 2007, the Appeals Council
remanded the matter to the ALJ for further review and
consideration of new medical records provided by Hina.  Tr. 66-
69.  The ALJ held a second hearing on September 25, 2007, at
which Hina was represented by an attorney.  Tr. 378-95.  Hina and
a VE testified at the hearing.  Tr. 378-95.  On October 3, 2007,
the ALJ issued a second opinion in which he incorporated the
findings from his prior decision and found Hina is not disabled.
Tr. 18-23.  That decision became the final decision of the
Commissioner on August 25, 2008, when the Appeals Council denied
Hina's request for review.  Tr. 7-9.

The Court notes in the ALJ's most recent opinion issued
October 3, 2007, he expressly adopted and incorporated by
reference the "discussion of the medical evidence, objective
findings, and opinion evidence from the prior hearing decision
[issued October 10, 2006]."  The Court, therefore, considers the
reasoning in both of the ALJ's opinions with respect to the
challenges raised by Hina.

3 - OPINION AND ORDER

## BACKGROUND

Hina was 40 years old at the time of the first hearing before the ALJ and was 41 at the time of the second hearing. Tr. 344, 378.  Hina completed her education through the twelfth grade.  Tr. 201, 209.  She has not worked since 1987.  Tr. 220. Hina alleges a disability onset date of November 3, 2003. Tr. 62.

Hina was struck by automobiles three times before the age of two and a half and suffered a fractured skull that required neurosurgery.  Tr. 328.  Hina has been diagnosed with osteoarthritis of the back, chronic low-back pain, and chronic migraines with photophobia.  Tr. 50, 53, 55-59, 61, 64, 118, 309, 323, 325-26, 357.  Hina also has been diagnosed as obese. Tr. 57, 118.

Hina has a history of both physical and psychological abuse by family members.  Tr. 295, 301, 327-28.  At age 19 she was violently raped by a stranger.  Tr. 124, 295, 301, 328.  She has been diagnosed with PTSD with agoraphobia, anxiety with panic attacks, and depression.  Tr. 51, 53-54, 56, 58, 64, 104, 278-80, 287-89, 305, 311-23, 331.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004

4 - OPINION AND ORDER

(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even

if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Hina has not engaged in substantial gainful activity since her alleged onset date of November 3, 2003. Tr. 20, 29.

At Step Two, the ALJ found Hina does not have any severe impairments. Tr. 20. The ALJ found Hina's left-sided shoulder pain, back pain, anxiety, and depression are "non-severe or non-medically determinable impairments" that do not significantly

8 - OPINION AND ORDER

limit Hina's ability to perform basic work-related activities.
Tr. 20.  Thus, the ALJ found Hina is not disabled and, therefore,
is not eligible for SSI benefits.  Tr. 23.  Accordingly, the ALJ
did not proceed to Steps Three, Four, or Five of the sequential
evaluation.

## DISCUSSION

Hina contends the ALJ erred by failing (1) to credit the
opinions of treating physicians Devon L. Evans, M.D., and Louise
A. McHarris, D.O.; (2) to provide clear and convincing reasons
for discrediting Hina's statements about the intensity,
persistence, and limiting effects of her symptoms; and (3) to
find Hina's post-traumatic stress syndrome (PTSD), anxiety,
depression, osteoarthritis, and obesity are severe impairments
under Step Two of the sequential evaluation.

**I.   Opinions of Drs. Evans and McHarris.**

Hina contends the ALJ erred by failing to credit the
opinions of Drs. Evans and McHarris, two of Hina's treating
physicians.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028,

9 - OPINION AND ORDER

1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632
(9th Cir. 2007)).  When the medical opinion of a treating
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at
830-32.

**A.   Dr. Evans's Opinion.**

Dr. Evans was Hina's treating physician for about a year in
2003 and 2004.  Tr. 58-60, 311-23.  Dr. Evans diagnosed Hina with
depression, PTSD, and osteoarthritis of the back.  Tr. 59, 312,
316-18, 322-23.  Dr. Evans described Hina's back pain as chronic
and prescribed rest, physical therapy, ibuprofen, and NSAIDS
(nonsteroidal anti-inflammatory drugs) to treat Hina's symptoms.
Tr. 59, 323.  Dr. Evans noted Hina is restricted as a result of
her osteoarthritis to standing less than two hours a day, to
sitting in alternate positions periodically to relieve pain, and
to lifting less than ten pounds on an occasional or frequent
basis.  Tr. 321.  Dr. Evans recommended Hina should not climb,
crouch, or crawl and only occasionally balance, stoop, or kneel.
Tr. 321.

Dr. Evans also described Hina's PTSD as a "lifelong"
condition that was likely to last for more than 12 months.
Tr. 314, 316, 318.  In his Mental Function Capacity Report,
Dr. Evans listed numerous limitations Hina suffers as a result
of her PTSD, including marked limitations on her ability to work

in coordination or proximity with others without distraction, to complete a normal workday and workweek without interruptions from psychological symptoms, to perform at a consistent pace without an unreasonable number and length of rests, to interact appropriately with the general public, to ask simple questions or to request assistance, and to travel to unfamiliar places or to use public transportation. Tr. 313-15. Dr. Evans also reported Hina's marked limitations "preclude[] [her] ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." Tr. 313. Moderate limitations are defined in the Mental Function Capacity Report as "seriously interfer[ing] with the individual's ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." Tr. 313. Dr. Evans identified Hina as being moderately limited in her ability to accept instructions and to respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. Tr. 314.

Dr. Evans noted Hina rarely leaves her home due to her PTSD. For example, Dr. Evans stated Hina does all of her shopping at night to avoid crowds and never goes out alone. Tr. 317. Due to Hina's PTSD, Dr. Evans concluded in the Rating of Impairment

Severity Report that Hina would suffer "continual" episodes of decompensation in the work environment, "which cause the individual to either withdraw from that situation or to experience exacerbation of signs and symptoms . . . with an accompanying difficulty in maintaining activities of daily living, social relationships, and/or maintaining concentration, persistence or pace."  Tr. 318.

**B.   Dr. McHarris's Opinion.**

Dr. McHarris was Hina's treating physician for over two years from 2004 through 2006.  Tr. 106-25.  Dr. McHarris diagnosed Hina with depression, anxiety, PTSD, agoraphobia, osteoarthritis of the back, morbid obesity and chronic pain. Tr. 118-19, 122, 125.  Dr. McHarris prescribed physical therapy and Flexeril for Hina's back pain and deferred to Hina's psychiatrist, Trevor Wheeler, M.D., for prescription treatment of Hina's mental conditions.  Tr. 120, 125.  Dr. McHarris opined Hina's back pain restricts her ability to stand and to lift and that Hina's PTSD makes it difficult for her to appropriately handle social situations.  Tr. 309.  In her treatment notes, Dr. McHarris reported Hina's tendency to withdraw and the fact that she rarely leaves her home.  Tr. 119, 124.

**C.   ALJ's Decision.**

The ALJ gave the opinions of Drs. Evans and McHarris "little weight" when he determined Hina does not have any severe

impairments and is not disabled.  Tr. 23, 33-34.  The ALJ
addressed the opinions of Drs. Evans and McHarris in a single
discussion and discredited each of their opinions on the same
four grounds:  (1) The medical evidence does not support their
opinions, (2) their conclusions about Plaintiff's mental
conditions are outside their areas of expertise, (3) they base
their opinions on Hina's subjective reports, and (4) their
opinions are undermined by Plaintiff's activities of daily
living.  Tr. 33-34.

The ALJ cited only to the opinion of a State Disability
Determination Services (DDS)[2] physician, Frank Lahman, Ph.D., as
the basis for discrediting the opinions of Drs. Evans and
McHarris.  Tr. 33.  A nonexamining physician's opinion alone is
not a legitimate basis to discredit a treating physician's
opinion.  *Lester*, 81 F.3d at 831 ("The opinion of a nonexamining
physician cannot by itself constitute substantial evidence that
justifies the rejection of the opinion of either an examining
physician or a treating physician.").

### 1.    Consistency with Other Medical Evidence.

The ALJ rejected the opinions of Drs. Evans and
McHarris on the ground that they are "not well supported by

---

[2] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

medically acceptable clinical and/or laboratory diagnostic studies." Tr. 33. Although the ALJ did not identify any contradictory clinical findings in the record, he, in effect, relied on the fact that the opinions of Hina's treating physicians lacked corroborating clinical findings. Treating physicians' opinions, however, do not require corroboration. The ALJ must "give weight not only to the treating physician's clinical findings and interpretation of test results, but also to [their] subjective judgments." *Lester*, 81 F.3d at 832-33. In other words, the ALJ must give "considerable deference" to the opinions of treating physicians. *Edlund*, 253 F.3d at 1157. Moreover, Drs. Evans and McHarris's long-standing relationships with Hina as her treating physicians make them "especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *See id.* at 833.

The record contains substantial evidence to support the opinions of Drs. Evans and McHarris. The Court notes the opinions of Dr. Evans and Dr. McHarris are consistent as to diagnoses, treatments, and descriptions of Hina's limitations. The diagnoses of depression, anxiety, osteoarthritis, chronic back pain were also confirmed by Felicia Sapp, M.D., another one

of Hina's treating physicians  Tr. 129-38.  In addition, the
diagnoses of PTSD with agoraphobia, anxiety with panic attacks,
and depression are also confirmed by Dr. Wheeler, Hina's treating
psychologist, and Pierre Morin, Ph.D., each of whom substantiates
the findings that Hina struggles to interact socially and to
leave her home due to fear and anxiety.  Tr. 282-83, 287-88, 292,
301-06.  Moreover, Sharon M. Labs, Ph.D., confirmed Hina's major
depressive disorder, panic attacks with agoraphobia, and learning
disorder of written expression on the basis of her clinical
neuropsychological tests.  Tr. 324-33.

          Ultimately, the only medical evidence in the record
identified by the ALJ as contradictory is the report by
Dr. Lahman, a nonexamining DDS physician.  According to Dr.
Lahman, however, he did not review any of the medical evidence in
the record, and the record reflects he only checked the box on
the form for "Insufficient Evidence" rather than any of the boxes
such as "No Medically Determinable Impairment" or "Impairment(s)
Not Severe."  Tr. 260.

          The Court finds on this record that the ALJ has not
identified any contradictory medical evidence to discredit the
opinions of Drs. Evans and McHarris and the record reflects
substantial medical evidence to support their opinions.
Accordingly, the Court concludes this is not a basis to discredit
the opinions of Drs. Evans and McHarris.

### 2.   Physicians' Expertise.

The ALJ also asserts the medical opinions of Drs. Evans and McHarris should be given little weight with respect to Hina's mental conditions and resulting limitations because their findings are beyond the expertise of both physicians.  Tr. 33. The ALJ merely notes Drs. Evans and McHarris are specialists in internal medicine and does not point to any evidence in the record to support his conclusion that neither physician has expertise in psychiatry.  Tr. 33.

The Ninth Circuit has held general practitioners "identify and treat the majority of Americans' psychiatric disorders" and their opinions as to mental conditions and limitations are medically acceptable and valuable due to the relationships treating physicians have with their patients. *Sprague v. Bowen*, 812 F.2d 1226, 1230-32 (9th Cir. 1987)(citing C. Tracy Orleans, Ph.D.; Linda K. George, Ph.D.; Jeffrey L. Houpt, M.D.; and H. Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners*, 142:1 Am.J. Psychiatry 52 (Jan. 1985)). Thus, the Court concludes this is not a basis to discredit the opinions of Drs. Evans and McHarris.

### 3.   Hina's Subjective Reports.

The ALJ also discredits the opinions of Drs. Evans and McHarris on the ground that "it appears much of the information

16 - OPINION AND ORDER

they used in making their assessments came from claimant's own subjective reports without any objective corroboration." Tr. 33. The ALJ, however, did not point to any specific report by Hina that undermined the opinions of Drs. Evans and McHarris.

> The Ninth Circuit has held:
>
> > Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. . . . A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record.

*Edlund*, 253 F.3d at 1157 (internal citation omitted).

Of the numerous physicians and psychiatrists in the record who examined or treated Hina, none questioned the veracity of Hina's reporting or suggested she was malingering. As noted, the medical opinions in the record are consistent as to Hina's physical and mental conditions. The Court, therefore, concludes this is not a basis to discredit the opinions of Drs. Evans and McHarris.

### 4.    Hina's Activities of Daily Living.

Finally, the ALJ discredits the opinions of Drs. Evans and McHarris on the ground that the limitations they describe are "not even consistent with the claimant's actual activities performed . . . as claimant reported injuries while moving heavy

17 - OPINION AND ORDER

objects and boxes."  Tr. 33-34.

Hina testified she did, in fact, lift a single, small box containing books during a move.  Tr. 365-66, 390.  She attested it was an isolated event and that she usually loaded very light things into boxes and taped them up for her husband and son to carry.  Tr. 390.  On lifting the box, Hina injured her back and was treated by Dr. McHarris, who admonished Hina to leave the lifting of heavy boxes to her husband and son.  Tr. 106.  In any event, it is not clear how the fact that Hina suffered a low-back injury and subsequent pain when lifting a single, heavy object undermines the opinions of Drs. Evans and McHarris that Hina is limited by her osteoarthritis and should not lift heavy objects.

In summary, the Court concludes on this record that the ALJ erred when he failed to provide clear and convincing reasons supported by substantial evidence in the record for rejecting the opinions of Drs. Evans and McHarris.

## II.  Hina's Testimony.

Hina also contends the ALJ erred by failing to provide clear and convincing reasons for rejecting her statements as to the persistence, intensity, and limiting effects of her impairments.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.

1991).  The *Cotton* test establishes two basic requirements for a
claimant to present credible symptom testimony:  She must produce
objective medical evidence of an impairment or impairments, and
she must show the impairment or combination of impairments could
reasonably be expected to produce some degree of symptom.
*Cotton*, 799 F.2d at 1407.  The claimant, however, need not
produce objective medical evidence of the actual symptoms or
their severity.  *Smolen*, 80 F.3d at 1284.

    If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Lester*, 81 F.3d at 834.  *See
also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).
General assertions that the claimant's testimony is not credible
are insufficient.  "[T]he ALJ must identify what testimony is not
credible and what evidence undermines the claimant's complaints."
*Lester*, 81 F.3d at 834.

    The ALJ found Hina satisfied the *Cotton* test by providing
evidence that she has a medically determinable impairment that
could be expected to produce some degree of the symptoms she
alleges.  Tr. 22, 30.  The ALJ, however, determined Hina's
subjective testimony about the "intensity, persistence, and
limiting effects" of her symptoms "are not entirely credible."
Tr. 22.  The ALJ did not identify any evidence of malingering in

19 - OPINION AND ORDER

the record.  Thus, the ALJ must provide clear and convincing
reasons for rejecting Hina's symptom testimony.  *Lester*, 81 F.3d
at 834.

Hina testified she suffers from chronic back pain that
limits her ability to stand to no more than 30 minutes and forces
her to take breaks while doing chores such as washing dishes.
Tr. 366-67.  Hina testified the pain also limits her ability to
remain in a single postural position, and she relies on a
homeopathic seat with heat and vibration to help her cope with
the back pain.  Tr. 367.  She attested carrying even a gallon of
milk aggravates her back pain.  Tr. 366-67.  According to Hina,
her back pain has forced her to give up hobbies such as hiking.
Tr. 351.

Hina also testified she cannot regularly go to a workplace
due to the fear and anxiety that she feels when she leaves her
home.  Tr. 355.  In fact, Hina stated she never leaves her home
alone and does limited grocery shopping only at night and with a
companion.  Tr. 356, 359.  Hina attested being in crowded places
triggers panic attacks.  Tr. 371.  She also testified she must
conduct telephone conferences with her son's teachers due to her
limitations caused by agoraphobia and could not even accompany
her blind son into the airport for his first airplane flight.
Tr. 370.  At the second hearing before the ALJ, Hina testified
the hearing was the first time in a month that she had left her

20 - OPINION AND ORDER

home.  Tr. 384.

The ALJ discredited Hina's testimony on the following grounds:  (1) Hina's symptoms are not supported "by the objective findings," (2) the record reflects significant gaps in Hina's medical treatment, (3) the record reflects Hina's impairments are well-managed with medication, (4) Hina's activities of daily living belie her testimony as to the limiting effects of her impairments, and (5) Hina's lack of work history since 1987 "raises question [*sic*] whether the current unemployment is truly the result of medical problems."  Tr. 30-33.

**A.    Objective Medical Evidence.**

The ALJ found the record does not contain "objective findings" to support Hina's testimony regarding the severity of her symptoms.  Although the ALJ found Hina had provided objective medical evidence as to her impairments, SSR 96-7p provides:

> Symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; however, their effects can often be clinically observed . . . the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.

SSR 96-7p, at *6.

**1.    Hina's Osteoarthritis.**

The ALJ notes Hina's x-ray of her lumbar spine revealed

21 - OPINION AND ORDER

"no acute skeletal injury." Tr. 31. That result, however, is irrelevant as to whether Hina suffers pain from swelling in her joints caused by the osteoarthritis for which Hina's physicians prescribed anti-inflammatories. Tr. 59, 323. In any event, the ALJ did not identify any objective medical evidence that contradicts the diagnosis of Hina's osteoarthritis of the back or the resulting limitations she and her physicians described.

### 2.   Hina's Mental Impairmentss.

The ALJ did not identify any objective medical evidence in the record that contradicts Hina's testimony regarding the limiting effects of her mental impairments. As noted, the record contains a clinical neuropsychological examination of Hina by Dr. Labs, who noted Hina's symptoms of withdrawal and confirmed her depression, panic disorder, and agoraphobia. Tr. 324-33. In addition, Dr. Morin completed a full psychiatric review of Hina that included her family and mental-health history, substance-abuse history, employment history, review of significant stressors, social history, medical history, and current mental-health status. Tr. 301-05. Dr. Morin's "clinical formulation" was that Hina suffered from PTSD and severe panic disorder. Tr. 305-06.

Thus, the Court concludes this is not a basis to discredit Hina's subjective symptom testimony.

**B.    Gaps in Hina's Medical Treatment.**

The ALJ notes there are gaps in Hina's medical-treatment history, which the ALJ found undermined Hina's testimony about the severity of her symptoms.  Tr. 23, 30-31.  The ALJ noted Hina's failure to follow up with physical-therapy treatment and counseling sessions as prescribed by her treating physicians and her lack of regular care between the first and second hearings. Tr. 23, 31-32.

SSR 96-7p provides:

> the adjudicator must not draw any inferences
> about an individual's symptoms and their
> functional effects from a failure to seek or
> pursue regular medical treatment without
> first considering any explanations that the
> individual may provide, or other information
> in the case record, that may explain
> infrequent or irregular medical visits or
> failure to seek medical treatment.

In addition, the Ninth Circuit has held "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

The ALJ noted one of Hina's health providers, Patricia Meuller, M.S., L.P.C., stated Hina's failure to attend counseling sessions was for health reasons.  Tr. 32.  In Meuller's treatment notes, she identifies Hina's severe agoraphobia and panic attacks had recently prevented Hina from leaving her home.  Tr. 279-80.

In addition, to explain a gap in her psychological treatment history identified by the ALJ at the first hearing, Hina testified she has difficulty obtaining care in part because she finds it hard to leave her home and to trust male health-care providers.  Tr. 354.  In addition, Dr. McHarris noted on October 8, 2004, that physical therapy was not covered by Hina's insurance.  Tr. 120.  The record also reflects Hina lost her insurance coverage for a time, which prevented her from receiving treatment or medication for her psychological impairments. Tr. 136.  In any event, the record reflects Hina was treated by her physicians or psychiatrists no fewer than 22 times between November 2003 and August 2006, which suggests Hina sought treatment for her conditions roughly every seven weeks over that period.

The Court finds Hina's inconsistent and limited insurance coverage in combination with Hina's fear of leaving her home are adequate explanations for any gaps in treatment.  Thus, the Court concludes this is not a basis to discredit Hina's subjective symptom testimony.

### C.    Symptoms Manageable by Routine and Conservative Treatment.

The ALJ also discredits Hina's subjective symptom testimony on the ground that her physical and psychological symptoms are manageable by routine and conservative treatment, which suggests Plaintiff's symptoms are not severe.  Tr. 31-32.

24 - OPINION AND ORDER

With respect to Hina's osteoarthritis, the ALJ notes Hina has not seen any specialists or required any surgery, and she has been treated primarily with physical therapy, over-the-counter ibuprofen, flexeril, and NSAIDS.  Tr. 31.

With respect to Hina's psychological symptoms, the ALJ found Hina's symptoms are controlled by Xanax and Celexa and noted Dr. Wheeler's finding in February 2005 that Hina had not experienced a panic attack since her previous visit.  Tr. 32. The ALJ also noted Dr. Wheeler stated in his treatment notes on May 24, 2004, that Hina "was neatly and causally dressed with good hygiene, pleasant, alert and cooperative."  Tr. 32, 289. Although the ALJ appears to have routinely made this sort of observation in both of his opinions and relied on treatment notes that give the impression that Hina is stable, he excluded the relevant diagnoses or explanations of symptoms by her physicians.  For example, in his treatment notes from May 24, 2004, Dr. Wheeler also stated Hina does not sleep well (only three to four hours a night) in part due to chronic back pain, suffers steady anxiety with two or three panic attacks a month that include two episodes of flashbacks of abuse per month, is afraid of confrontation and of being hurt when around groups of people, and experiences a two-week period of depression every couple of months.  Tr. 289.  In his February 3, 2005, treatment notes, Dr. Wheeler states Xanax had helped Hina head off anxiety

attacks since her last visit three weeks before.[3]  Tr. 282.
Dr. Wheeler also noted Hina continues to have PTSD and anxiety
issues, difficulty sleeping, and recurrent flashbacks.  Tr. 282.
Moreover, in his August 18, 2005, treatment notes (six months
later) Dr. Wheeler notes  Hina's ongoing fear of leaving her
home, anxiety on public transportation, flashbacks, and
difficulty sleeping for more than four hours a night.  Tr. 278.
He diagnosed Hina at the time with PTSD, chronic anxiety with
agoraphobia, and depression.  Tr. 278.

        Considering the record as a whole, the few isolated notes by
Hina's physicians that she is having some success with certain
medications is not inconsistent with Hina's testimony that she
suffers from chronic back pain that limits her ability to sit,
stand, walk, and lift and suffers from chronic symptoms of PTSD,
depression, and anxiety that make her afraid to leave her home
and unable to cope around groups of people.  The Court,
therefore, concludes the conservative nature of Hina's treatments
is not a basis to discredit Hina's testimony.

---

        [3] In his treatment notes from January 10, 2005, Dr. Wheeler
noted Hina is depressed and anxious most of the time, and her
family thinks she is getting worse.  Tr. 283.  Dr. Wheeler also
noted Hina was scared, suffered recurrent flashbacks that
interrupt her sleep, and had difficulty traveling on public
transportation.  Tr. 283.  That day, Dr. Wheeler wrote Hina a
note limiting her to a maximum of a half-day of vocational
rehabilitation.  Tr. 284.

26 - OPINION AND ORDER

D.    **Activities of Daily Living**.

The ALJ also found Hina's activities of daily living were inconsistent with her claims of disability.  Tr. 33.  The ALJ noted Hina was able to (1) perform light housework and cooking, (2) go out with her boyfriend, (3) take public transit, and (4) start a job-training program.  Tr. 33.

The Ninth Circuit has held:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

*Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004).  As noted, one does not need to be utterly incapacitated to be disabled under the Social Security Act.  *Smolen*, 80 F.3d at 1284 n.7.

Hina testified she could perform certain chores but not without aggravating her back symptoms and requiring some time to rest.  Moreover, Hina testified even though she is able go out with her boyfriend, generally they rent movies to watch at home because she could not go to the theater and they would go to drive-through restaurants to avoid crowds of people at restaurants.  Tr. 349-50.  In fact, Hina testified she never leaves her home alone.  Tr. 359.  The record also is replete with

27 - OPINION AND ORDER

notations by Hina's physicians that she struggles when she uses public transit because she is afraid of being in crowds. With respect to her job training, Hina testified she was able to complete only three days of training before she was asked to leave due to her inability to focus. Tr. 358.

The Court finds on this record that Hina's limited activities of daily living are not inconsistent with the testimony she gave regarding the limiting effects of her impairments. Thus, the Court concludes her activities of daily living are not a basis to discredit her symptom testimony.

### E.    Work History.

Finally, the ALJ found Hina's lack of employment since 1987 "raises question [*sic*] whether the current unemployment is truly the result of medical problems." Tr. 33.

The Commissioner notes the Ninth Circuit has found a claimant's "spotty" work history to be a legitimate basis to discredit a claimant's subjective symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In *Thomas*, however, the ALJ relied on additional findings to discredit the claimant, including numerous inconsistent statements regarding her drug and alcohol use and her failure to give "maximum or consistent effort" during her physical-capacity evaluations in order to impede accurate testing of her limitations. *Id. Thomas* however, is distinguishable from this case.

The record reflects during her period of unemployment, Hina was a single mother caring for a disabled (legally blind) child. Tr. 329. As noted, the record also reflects Hina suffers from a "lifelong" condition of PTSD resulting in part from familial abuse as a child and sexual assault as a teenager that makes it difficult for her to leave her home. Moreover, unlike the ALJ in *Thomas*, the ALJ here did not find Hina made inconsistent statements to her physicians or exhibited self-limiting behavior during examinations that undermined her veracity with respect to the limitations of her impairments. *See id.* Considering the record as a whole and in light of the corroborating opinions of her treating physicians and psychologists, the Court concludes Hina's lack of work history is not a basis to discredit her subjective symptom testimony under the circumstances.

In summary, the Court concludes on this record that the ALJ erred when he did not provide clear and convincing reasons supported by substantial evidence in the record for rejecting Reed's subjective symptom testimony.

**III. Additional Severe Impairments.**

Hina also contends the ALJ erred by failing at Step Two to find Hina's osteoarthritis, mental impairments, and obesity to be severe impairments. In particular, Hina contends she suffers significant work-related limitations from her physical and mental limitations that, at a minimum, warrant a finding that those

29 - OPINION AND ORDER

conditions are severe at Step Two.

At Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 416.921(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. . . . [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

The Ninth Circuit describes Step Two as a "*de minimus* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.  *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).  "Great care should be exercised in applying the not severe impairment concept."  SSR 85-28, at *4.

The ALJ found at Step Two that Hina did not have any severe impairments and, specifically, the ALJ concluded Hina's conditions do not "significantly limit[] her ability to perform basic work activities."  Tr. 21.  The ALJ, therefore, concluded Hina is not disabled and did not continue with his analysis at Steps Three, Four, or Five.  Tr. 21.  The ALJ identified only the single medical report of Dr. Lahman, a nonexamining physician, in the record to support the ALJ's finding that Hina does not have any functional limitations resulting from her physical or mental conditions.  Tr. 33, 374.  As noted, however, Dr. Lahman did not conclude Hina does not have any impairments or resulting limitations, but instead stated he never received Hina's medical records and, accordingly, he had insufficient evidence to make any determination.  Tr. 260-73.

Based on the opinions of Hina's treating physicians and Hina's testimony with respect to the limitations resulting from her physical and mental conditions, the Court concludes Hina has met her burden to show that her osteoarthritis and her mental conditions, including PTSD, anxiety, and depression, are more

31 - OPINION AND ORDER

than "slight" abnormalities.  *See* SSR 85-28, at *2.  The record
reflects Hina is significantly limited at least with respect to
her abilities to walk, to stand, to sit, and to lift; to use
judgment; to respond appropriately to supervision, co-workers,
and usual work situations; and to deal with changes in a routine
work setting.  *See* 20 C.F.R. §§ 416.921(a), (b).  The Court,
therefore, does not find on this record that Hina's conditions
"could never prevent a person from working" nor that Hina's claim
is "groundless."  *Id.  See also Smolen*, 80 F.3d at 1290.  Thus,
the COurt concludes the ALJ erred when he found Hina did not have
any severe impairments at Step Two.


## REMAND

Having found the ALJ erred at Step Two in concluding Hina is
not disabled, the Court must determine whether to remand this
matter for further proceedings or to remand for calculation of
benefits.

The Court notes a VE testified at the first hearing before
the ALJ.  The ALJ's first hypothetical to the VE, apparently
based on the report by Dr. Lahman, did not include any
limitations for the claimant.  Tr. 374.  Based on that
hypothetical, the VE testified such a claimant could "perform
work in the competitive economy," including work as a maid, a
small-products assembler, a classifier for laundry and linen

32 - OPINION AND ORDER

departments, and a hand packager.  Tr. 374-75.  The ALJ also

posed a second hypothetical to the VE that included the

limitations determined by Dr. Evans.  Tr. 375-76.  In the second

hypothetical, the claimant had the ability

> to lift on occasion less than ten pounds,
> frequently, six hours or more, less than ten
> pounds; stand and walk less than two hours in
> an eight-hour day; sitting, alternating
> sitting and standing; limitations with regard
> to postural activities, never climbing, never
> crouching or crawling and only occasional
> balance, stooping, and kneeling;
> environmental limitations, to avoid exposure
> to noise and hazards; and with regard to
> mental limitations, marked limitations in the
> ability to work in coordination with or
> proximity with others without being
> distracted by them, marked limitations in the
> ability to complete a normal workday and
> workweek without interruptions from
> psychologically-based symptoms, marked
> limitations  in the ability to interact
> appropriately with the general public and the
> ability to ask simple questions, and marked
> limitations in the ability to travel to
> unfamiliar places or use public
> transportation.

Tr. 375-76.  In response to this hypothetical, the VE testified

such a claimant would not be able to perform the same jobs as the

claimant in the first hypothetical and, furthermore, would not be

able to perform any jobs in the competitive economy.  Tr. 376.

The VE added, "[S]ustaining work would be very compromised."

Tr. 376.

The Ninth Circuit has established a three-part test "for

determining when evidence should be credited and an immediate

33 - OPINION AND ORDER

award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

     The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose." *Smolen*, 80 F.3d at 1292.

     When determining whether the record is complete, the Ninth
Circuit has held:

> [W]e notice that no vocational expert has
> been called upon to consider all of the
> testimony that is relevant to the case.  This
> court recently wrote that "[i]n cases where
> the vocational expert has failed to address a
> claimant's limitations as established by
> improperly discredited evidence, we
> consistently have remanded for further
> proceedings rather than payment of benefits."
> In addition, the testimony given was not
> clear as to the duration of Ms. Bunnell's

> difficulties.  To be found disabled, a
> claimant must be unable to work for twelve
> consecutive months.  The duration of
> Ms. Bunnell's impairments must, therefore, be
> clarified.

*Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003)(citing

*Harman*, 211 F.3d at 1180)(internal citation omitted)).  Testimony

of a VE, however, as to the claimant's particular limitations is

not an absolute requirement if "it is clear from the record that

the claimant is unable to perform gainful employment in the

national economy."  *Benecke v. Barnhart*, 379 F.3d 587, 595-96

(9th Cir. 2004)(remanded for award and calculation of benefits

despite VE testimony as to the claimant's functional limitations

when the record clearly established the claimant could not

perform even sedentary work).

Here the VE testimony clearly establishes Hina would be

unable to sustain any type of employment in the competitive

economy based on the limitations set out by Dr. Evans, one of her

treating physician, and confirmed by the findings of Hina's other

treating physicians and psychiatrists.  Tr. 311-22, 375-76.

Because the ALJ did not provide legally sufficient reasons for

discrediting the opinions of Drs. Evans and McHarris, the Court

credits the opinions of Drs. Evans and McHarris as true.  *See*

Benecke, 379 F.3d at 594 (when "the ALJ fail[s] to provide

legally sufficient reasons for rejecting . . . [a] physician['s]

opinion[]," the court credits that opinion as true).  *See also*

*Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is credited as a matter of law).  Because the ALJ also failed to provide legally sufficient reasons for discrediting Hina's subjective-symptom testimony, the Court credits her testimony as true.  *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009).

On the basis of the opinions of Drs. Evans and McHarris and the testimony of Hina and the VE, the Court concludes this record establishes that Hina cannot sustain work-related physical and mental activities on a regular and continuing basis and, therefore, is disabled and entitled to benefits.  Thus, additional proceedings "would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 20th day of January, 2010.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District

36 - OPINION AND ORDER